1

2

THE HONORABLE RONALD B. LEIGHTON

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

THE CAMPBELL PET COMPANY,

12

                    Plaintiff,

13

    v.

No.  07-CV-5375-RBL

14

THERESA MIALE; and
TY-LIFT ENTERPRISES, a California
Corporation,

**(Oral Argument Requested)**

15

16

                Defendants.

17

18

_____

19

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

20

21

_____

22

DATED October 9, 2007

23

/s/ Kurt M. Rylander_____
KURT M. RYLANDER, WSBA 27819
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931
rylander@rylanderlaw.com
www.rylanderlaw.com
Of Attorneys for Plaintiff

24

25

26

27

28

29

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
(07-CV-5375-RBL)**
10/9/2007 5:00:40 PM CAMP03




# TABLE OF CONTENTS

Page

Memorandum in Opposition ................................................................... 1

I.   Background and Statement of Facts .................................................. 2

II.  Argument   ...................................................................................... 6

    A.   Personal Jurisdiction is appropriate in this case ...................... 7

         1.   General Jurisdiction is satisfied by Defendants'
              contacts with Washington over eight years ....................... 9

         2.   Both Defendants are subject to personal jurisdiction
              based on principles specific jurisdiction as well ............. 12

         3.   Defendants have presented no compelling reasons
              to deny jurisdiction ....................................................... 16

              a.   No great burden is imposed on Defendants by
                   asking them to defend their actions in the state
                   where they took place ........................................... 16

              b.   The interest of Washington and the several
                   states in furthering fundamental substantive
                   policy goals coincide here ..................................... 17

              c.   Plaintiff's have an obvious interest in obtaining
                   relief .................................................................. 18

              d.   The interstate judicial interest in obtaining the
                   most efficient resolution of controversies favors
                   Washington .......................................................... 18

         4.   Caselaw supports personal jurisdiction on the
              present facts .................................................................. 19

    B.   Ms. Miale is subject to personal jurisdiction as the patent
         owner who threatened to enforce her rights against
         Plaintiff, as well as her company .......................................... 21

    C.   Ty-Lift held itself out to be the owner of the patents, so
         this Court should exercise jurisdiction over Ty-Lift as well ..... 22

    D.   There is unquestionably an actual case or controversy ........... 23

III. CONCLUSION .............................................................................. 24



## MEMORANDUM IN OPPOSITION

The Court should deny Defendants' motion to dismiss. Ms. Miale's declaration on its own shows systematic and continuous contacts between herself and her wholly owned company with the State of Washington. Moreover, the evidence of their specific contacts with Washington which gave rise to this case is clear and abundant.[1] This is not a case where the <u>only</u> contact with the forum state was demand letters.  Ms. Miale and her company traveled to Washington, conducted a tree day trade show in Washington hawking patented products, consummated sales at the Washington trade show, made public in-person accusations of infringement in Washington, attempted to enforce her patents at the Washington trade show, and have had purposeful and ongoing commercial contacts with Washington over the eight years of the company's existence. The articles Ms. Miale and her company contend infringe her patents are made in Washington by a business in Washington.  Moreover, Ms. Miale is the patent owner and personally carried out these actions, not through third party licensees.

Simply put, Defendants aggressively assert their patents against competitors. Defendants confronted Plaintiff's employees several occasions during the Washington trade show, telling Plaintiff it would "Cost a lot of money' and "patent attorneys were expensive" and Plaintiff is just a "knock off artist", "copying Defendants' patents".  Finally, following up on their threats, Defendants sent the demand letter claiming infringement the patents and demanding licensing fees.

---

[1] As discussed below, Ms. Miale's attempts to differentiate her contact with Washington and her company's contact with Washington is simply not supportable.



1

2

3

I.    <u>**BACKGROUND AND STATEMENT OF THE FACTS**</u>

4

5    Plaintiff supplements the Background and Statement of Facts because

6    Defendants' Statement of Facts is incomplete, self-serving and contradictory.

7    Defendants attempt to play down their significant commercial contacts with

Washington.

8

9    Campbell Pet Company (Campbell) is located in Vancouver, Washington

10    and employs over 40 people manufacturing and selling pet accessories and

products including, among other things, a Mobile Folding Stretcher for transporting

11    injured animals. Campbell's Mobile Folding Stretcher is currently sold and offered

12    for sale by Plaintiff in the United States.  Campbell intends to continue selling this

13    product in the future. *Decl. Sam Campbell re: Opposition to Motion to Dismiss ¶¶*

14    *1-3; Decl. Stan Leslie re: Opposition to Motion to Dismiss ¶¶ 1-3.*  The multiple

15    threats of infringement in this case cast a significant pall over Plaintiff's

16

17    manufacturing and harm Plaintiff's marketing interests.

18    The specific events leading to this suit occurred at the 2007 ACVIM Seattle

19    Forum.  During June, 2007, Plaintiff and Defendants attended a trade show as

20    exhibitors at the Washington State Convention and Trade Center (the "Convention

21    Center") in Seattle, Washington, sponsored by the American College of Veterinary

22    Internal Medicine (ACVIM).  *Decl. Chris Campbell ¶5; Decl. Stan Leslie ¶ 5.*

23    Vendors set up their booths for the show on June 6, 2007.  *Id.*  The trade show was

24    open to visitors June 7-June 9, 2007.  *Id.*  Vendors rented booth space which

25    required them to execute contracts and pay monies.  *Decl. Chris Campbell ¶¶7-8.*

26

27    The contract signed by participants at the trade show imposed specific

28

29



requirements on vendors to comply with the rules of the Washington Convention Center, as well as requirements to: indemnify the Washington State Trade and Convention Center against liability; procure Comprehensive General Liability Insurance for at least $2,000,000 specifically naming the Washington State Convention & Trade Center as an insured; procure and maintain worker's compensation and occupational disease insurance complying with state laws for their employees; and, exhibit booth installations were subject to compliance with local, city and state laws, ordinances and regulations, including inspection by the local fire marshal. *Decl. Chris Campbell ¶9.*

Defendants rented a middle booth which, based on price lists provided to Plaintiff when they rented their booths, cost at least $1800. *Decl. Chris Campbell ¶7.* Participants were also required to pay for the services of local support personnel in setting up booths, including electrical hookups, material handling, booth material costs, and other costs. *Id.* Defendants necessarily incurred other costs for the minimum four day event such as hotels, meals and transportation, which were substantial for a single event when viewed in relation to Ty-Lift's annual sales. *Id.* All of these items would be purchased in Washington and would incur Washington sales taxes, at upwards of $4,400 to participate in this marketing and sales event. *Decl. Chris Campbell ¶¶ 9-14.*

During the trade show Theresa Miale and her mother, the only two employees of Defendant Ty-Lift, confronted Plaintiff's employees several times, publicly accusing them of "copying their patents" and warning them that Campbell Pet Company would be in "trouble", that Ms. Miale had contacted her patent

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

attorney, and warning that patent attorneys and litigation are expensive.  *Decl. Chris Campbell ¶12; Decl. Stan Leslie ¶¶ 13-15..*[2]

Theresa Miale and her mother took action by demanding that the Manager of the Seattle Forum, Ms. Becky Stevens, order Campbell Pet Company to remove their Mobile Folding Stretcher from the trade show floor alleging that it infringed "her patents."  *Decl. Counsel Mark Beatty ¶ 8; Decl. Chris Campbell ¶ 15; Decl. Stan Leslie ¶ 16.*  Ms. Stevens declined, explaining that neither she nor her staff had the patents to look at, nor were they qualified to evaluate an issue such as infringement, and that the dispute was between Ms. Miale and Campbell Pet Company.  In that series of conversations Ms. Miale specifically spoke of "patents" that she "owned" and used the term "infringing."  *Decl. Counsel Mark Beatty ¶ 3f .*

After the trade show, following up on her threat to have "her attorney" contact Campbell, Ms. Miale had her attorney F.T. Alexandra Mahaney, of the law firm Wilson Sonsini Goodrich and Rosati send a letter to Campbell in Vancouver, Washington.  Defendant alleged in the letter that Campbell's Mobile Folding Stretcher infringed claims of the "Ty-Lift's" '508 and '662 Patents.  Defendant included a claim comparison chart in this letter alleging that Plaintiff's Folding Stretcher was literally covered, i.e. infringed, at least claim 3 of the '508 patent and claim 22 of the '662 patent, which were included as exhibits to the demand letter stating, "Your Mobile Folding Stretcher <u>clearly falls within several claims of these patents</u>, as shown by the following comparison..."  *Decl. Sam Campbell, Exh. A.*

Defendants play creative accounting games in the effort to minimize their

---

[2] Ms. Miale accused Chris Campbell of threatening to punch her 74 year old mother, but Mr. Campbell has categorically denied the accusation and it appears to be part and parcel of



contacts.  Defendants' alleged sales drift from $7,300 over the previous five years

to approximately $23,000, depending on what point they seek to make.  Based on

Defendant's Motion to Dismiss, Defendants have made nearly $23,000 of sales in

Washington over the eight years of their existence (*see chart at p.5 of Defendant's*

*Motion to Dismiss*) which represents a significant portion their average gross

revenue (*see  Supp. Decl. Rylander re: Opposition to Motion to Dismiss, filed under*

*seal*).  This $23,000 figure includes at least $9,400 of sales while physically present

in Washington at the trade show in June, 2007, which gave rise to the present suit.

*See Defendants' Motion to Dismiss pp. 4-5.*  The <u>correct</u> chart[3] is:

| YEAR | SALES IN OR TO WASHINGTON |
|---|---|
| 2000 | $  2,200 |
| 2001 | $  4,450 |
| 2002 | $  2,501 |
| 2003 | |
| 2004 | |
| 2005 | |
| 2006 | $  4,700 |
| 2007, 1st Half | $  9,400 ( to date) |
| Total (to date) | $23,251 |
| | |
| Avg/year ($23,251/7.5) | ~$3,100/year |

Thus, Defendants' sales in Washington represent a significantly higher percentage

of her annual gross revenue than Miale leads the Court to believe in her unsealed

declaration. *See Supplemental Declaration of Counsel Rylander ¶¶4-7 and Table.*

---

Defendants' histrionics.  *Decl. Chris Campbell ¶13.*

[3] Defendants omit the $9,400 in Washington in 2007 from their sales figures, even though later on in their brief, they admit those sales have been consummated!

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

Defendants have also played games with the issue of ownership of the patents, flip-flopping on the issue of ownership of the '508 and '622 patents, depending on whom they are addressing.   At the Seattle Forum trade show, Ms. Miale said they were her patents.  Yet, in the demand letter sent to Plaintiff by Ms. Miale's attorney, on July 11, 2007, shortly after the Seattle Forum, Defendants stated unequivocally that Ty-Lift owned the patents in dispute: "We want to bring to your attention two patents **owned by Ty-Lift Enterprises**: U.S. Patent No. 6,199,508 (the "'508 patent") and U.S. Patent No. 6,230,662 (the "'662 patent")." *See Exh. F to Complaint.*   Now, in their Motion and supporting declarations, Defendants allege that Ms. Miale is the sole owner of these patents, Ty-Lift is a mere licensee subject to a verbal license, and that Ty-Lift may not assign its license without permission of Ms. Miale.  *See Decl. Miale re Defendants' Motion to Dismiss at ¶5.*   Ms. Miale fails to clarify in her sworn declaration which statement is the prevarication, for they clearly cannot both be true and accurate.  To this point it must be remembered that Ms. Miale is the president, owner, main employee, and general dogsbody for her company.  It is inconceivable that her attorney was not acting on her instructions.

## II.    <u>ARGUMENT</u>

Both Ms. Miale as the (alleged) patent owner and Ty-Lift as the (alleged) patent owner or exclusive licensee are each subject to personal jurisdiction in Washington based on continuous and substantial contacts with the State, as well as based on the specific facts and circumstances giving rise to the present suit. Contacts supporting jurisdiction in this case far exceed the minimum standards of



due process described by the Supreme Court.  Defendants have made substantial sales of their patented products into Washington over the past eight years, have made substantial sales while physically present in Washington, and actively marketed their products in Washington to Washington residents and visitors alike. Moreover, these were not the acts of mere third party licensees, but were in fact the acts of the patent owner herself and her company, subject to her exclusive direction and control.

A.    **Personal Jurisdiction is appropriate in this case.**

Personal jurisdiction in patent cases is based on the same standards of Due Process as any other cases.  "It is jurisdiction that is at issue, not liability for patent infringement."  Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1457-8 (Fed. Cir. 1997) (Reversing district court and finding personal jurisdiction appropriate based in part on pre-patent contacts with forum state).  The Court of Appeals for the Federal Circuit (CAFC) caselaw controls for personal jurisdiction questions involving patent law claims, but in reality any differences are "academic" because the Supreme Court has clearly explicated the Constitutional bases for Federal Courts to exercise personal jurisdiction.  Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 footnote (Fed. Cir. 1998) ("In any event, the question of which Due Process Clause controls the personal jurisdiction inquiry becomes purely academic because this court, though professing reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of International Shoe.")

There are two recognized bases for exercising personal  jurisdiction over



non-resident defendants: (1) "general jurisdiction," which arises when the defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. <u>Red Wing Shoe Co.</u>, 148 F.3d at 1358-59. "Random," "fortuitous," or "attenuated" contacts do not count in the minimum contacts calculus, nor do contacts resulting from the unilateral activities of otheres-but contacts purposefully directed to the forum states or its residents confer jurisdiction. <u>Burger King</u>, 471 U.S. at 475, 105 S.Ct. 2174; <u>Red Wing Shoe Co.</u>, 148 F.3d at 1358-59.  Clearly, the Seattle Forum trade show was not "random", "fortuitous," or "attenuated," and neither were the sales of expensive articles directed to Washingtonians and/or in Washington.

The Court has the discretion to either decide the issue on the basis of affidavits and documentary evidence submitted by the parties, or hold an evidentiary hearing regarding the matter. <u>Amini Innovation Corp. v JS Imports</u>, 497 F. Supp.2d 1093, 1100 (C.D. Cal. 2007) (general personal jurisdiction not found, but specific personal jurisdiction was found) (citing 5A Charles A. Wright & Arthur Miller, Federal Practice and Procedure, § 1351, pp. 253-59 and n. 31-35 (2d ed.1990); <u>Data Disc, Inc. v. Systems Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir.1977); <u>Rose v. Granite City Police Dept.</u>, 813 F.Supp. 319, 321 (E.D.Pa.1993)).  Where, the Court decides the matter on the basis of affidavits and documentary evidence, the plaintiff need only make a *prima facie* showing of personal jurisdiction, i.e., facts that, if true, would support the court's exercise of



jurisdiction over the defendant.  Amini Innov., id. at 1100 (citing numerous cases). All allegations in the complaint must be accepted as true, to the extent not controverted by defendant's affidavits, and all conflicts in the evidence must be resolved in plaintiff's favor. Amini Innov., id. (citing numerous cases). If the plaintiff shows that the defendant has the requisite minimum contacts with the forum state, the defendant bears the burden of presenting a "compelling case" for the unreasonableness of personal jurisdiction. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1351-52 (Fed Cir. 2003).

1.    **General Jurisdiction is satisfied by Defendants' contacts with Washington over eight years.**

General jurisdiction is satisfied here because Defendants Theresa Miale and her company Ty-Lift have purposefully directed marketing and sales efforts at Washington residents over eight years, and particularly through the Seattle Forum in 2007.  They have also directed marketing and sales efforts  at Washington residents through Internet advertising which, by its nature, is directed to Washington residents.  These systematic and continuous contacts over eight years satisfy the requirements for general jurisdiction.

General jurisdiction exists over a defendant if the defendant has "substantial" or "continuous and systematic" contacts with the forum state that "approximate physical presence" there. Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082, 1086 (9th Cir.2000); Red Wing Shoe Co., 148 F.3d at 1358-59. To determine if a defendant's contacts with the forum state are "continuous and systematic" or "substantial," the court must examine all of its

**RYLANDER**
**& ASSOCIATES PC**
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1
2
3  activities that impact the state, including whether it makes sales, solicits or
4  engages in business, serves the state's markets, designates an agent for service of
5  process, holds a license, or has employees there. Helicopteros, 466 U.S. at 411,
6  104 S.Ct. 1868; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295,
7  (1980); Perkins, 342 U.S. at 445-49, 72 S.Ct. 413.

8       The Due Process Clauses of the Fifth and Fourteenth Amendments permit
9  courts to exercise personal jurisdiction over any defendant that has sufficient
10 "minimum contacts" with the forum that the "maintenance of the suit does not
11 offend traditional notions of fair play and substantial justice." International Shoe Co.
12 v. Washington, 326 U.S. 310, 316 (1945); Red Wing Shoe Company, Inc. v.
13 Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358-59 (Fed. Cir. 1998).   "[W]ithin
14 the forum State, these contacts may be considered in light of other factors to
15 determine whether the assertion of personal jurisdiction would comport with 'fair
16 play and substantial justice.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476
17 (1985) (quoting International Shoe, 326 U.S. at 320); Red Wing Shoe Co., 148
18 F.3d at 1358-59. These factors may serve to "establish the reasonableness of
19 jurisdiction upon a lesser showing of minimum contacts than would otherwise be
20 required." Burger King, 471 U.S. at 477,105 S.Ct. 2174; Red Wing Shoe Co., 148
21 F.3d at 1358-59. "So long as a commercial actor's efforts are 'purposefully directed'
22 toward residents of another State, we have consistently rejected the notion that an
23 absence of physical contacts can defeat personal jurisdiction there."   Keeton v.
24 Hustler Magazine, Inc., 465 U.S. 770, 774-775 (1984).

25       Cease and desist letters, combined with ongoing business within the forum
26
27
28
29



state, are enough to support the minimum contacts requirements of Due Process. Genetic Implant Systems, 123 F.3d at 1458. "Thus, the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to negotiate a license on the patent at issue there." Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc. and Pamlab, LLC, 444 F.3d 1356, 1366, 78 U.S.P.Q.2d 1581 (Fed Cir. 2006) (Reversing district court's dismissal based on lack of personal jurisdiction in a declaratory judgment action for noninfringement). It is irrelevant whether those minimum contacts all relate to the asserted patents as the issue is personal jurisdiction, not liability for patent infringement. Genetic Implant Systems, 123 F.3d at 1458-9.

In this case Ms. Miale as the patent owner and Ty-Lift as the patent owner or the licensee have made substantial sales in Washington over the past eight years, totalling over $23,000. This includes sales while physically present in Washington. While each case must necessarily be determined on its facts, this purposefully directed activity by Defendants represents a substantial percentage of their total sales over this period and has been continuous with sales in five of the past eight years. Especially relevant is the large percentage of sales in the current year, 2007, made by Defendants at the Seattle Forum. Therefore, this Court may appropriately exercise personal jurisdiction over Defendants based on a theory of general jurisdiction.

Moreover, Defendants also operate an interactive website[4] which satisfies

---

[4] Once again showing the inseparability, the Ty-Lift website has numerous pictures of Ms. Miale herself and she describes herself as the inventor and the president.


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3  by itself the minimum contacts test on its own.  Defendants interactive website for

4  sales of their "patented" product involves online ordering and a promise of direct

5  "worldwide shipping".  It has click through links to Visa and Federal Express,

6  among other site features. *Exh. A to Decl. Rylander re: Opposition to Motion to*

7  *Dismiss.*   A "sliding scale" analysis, first set forth in <u>Zippo Manufacturing Co. v.</u>

8  <u>Zippo Dot Com, Inc.</u>, 952 F.Supp. 1119 (W.D.Pa.1997), is used to determine

9  whether operation of a website constitutes purposeful availment of the benefits of

10 doing business in the forum state absent other contacts with the forum. See

11 <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 418 (9th Cir.1997) (citing <u>Zippo</u>,

12 952 F.Supp. at 1124).  Applying this sliding scale, an interactive website through

13 which "the defendant enters into contracts with residents of a foreign jurisdiction

14 that involve the knowing and repeated transmission of computer files over the

15 Internet" justifies an exercise of personal jurisdiction. <u>Zippo</u>, 952 F.Supp. at 1124.

16

17        The evidence of minimum contacts for general jurisdiction is established.

18     **2.    <u>Both Defendants are subject to personal jurisdiction based on</u>**

19        **<u>principles specific jurisdiction as well.</u>**

20        Specific jurisdiction involves two inquiries: (1) whether the state's

21 long-arm statute permits service of process in this case; and, (2) whether personal

22 jurisdiction violates due process under the circumstances.   <u>Genetic Implant</u>

23 <u>Systems, Inc. v. Core-Vent Corp</u>., 123 F.3d 1455, 1457-8 (Fed. Cir. 1997) (citing

24 <u>BurgerKing Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-76 (1985)).   The state of

25 Washington's long arm statute is coextensive with Due Process, thereby satisfying

26 the first step of the test.  <u>Id</u>, 123 F.3d at 1458. The Due Process part of the inquiry

27

28

29


**R** **RYLANDER**
**& ASSOCIATES PC**
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3   "involves consideration of three factors: [1] whether the defendant purposefully

4   directed its activities at residents of the forum, [2] whether the claim arises out of or

5   relates to the defendant's activities with the forum, and [3] whether assertion of

6   personal jurisdiction is reasonable and fair. Akro Corp. v. Luker, 45 F.3d 1541,

7   1545-46, 33 USPQ2d 1505, 1508-09 (Fed.Cir.1995) (citing Burger King, 471 U.S.

8   at 471-76, 105 S.Ct. at 2181-84)."   Specific jurisdiction exists, even if general

9   jurisdiction does not, when the cause of action at issue "arises out of or relates to"

10  those contacts, even if those contacts are "isolated and sporadic." Burger King, 471

11  U.S. at 472-73, 105 S.Ct. 2174; Red Wing Shoe Co., 148 F.3d at 1358-59.  In a

12  patent suit, it is settled that "**even a single contact** with a forum state may suffice

13  for personal jurisdiction if it is directly and substantially related to the plaintiff's

14  claim." Red Wing Shoe, 148 F.3d at 1359 (emphasis added); Burger King, 471

15  U.S. at 475 & n. 18, 105 S.Ct. 2174 ('even a single act can support jurisdiction");

16

17  *accord* Genetic Implant Systems, 123 F.3d at 1458. The only question then, is

18  whether this Court's exercise of personal jurisdiction over TyLift and Theresa Miale

19  meets Due Process concerns.  The answer is clearly yes.

20      The facts of this case, even as they are panglossed by Defendants, far

21  exceed the facts supporting personal jurisdiction in Akro, 45 F.3d 1541.  In Akro,

22  infringement letters sent into the forum state combined with a license granted to a

23  distributor to conduct marketing and sales in the forum state was easily sufficient to

24  establish personal jurisdiction.  Akro, 45 F.3d at1545-46.  Here, Defendants have a

25  history of sales into Washington.  In the past eight years, through 2007 (which

26

27  Defendants seem to leave out of their calculations), they have made direct sales of

28

29



1

2

3   their products *to* Washington residents totalling at least $13,851.  These sales were

4   not made through third party licensees but directly by Defendants.  Moreover, they

5   have made at least $9,400 in sales *from* Washington to out of state customers who

6   were physically present in the state at the June, 2007 trade show in Seattle.  And,

7   Defendants directed advertising directly to persons in Washington during the trade

8   show.  *See Exh. 1, p.5, to Decl. Miale, advertising "Trade Show Specials!"* (i.e. only

9   available to persons *physically present at* the Washington trade show).  Although

10  these $23,000-plus in sales may seem small in absolute terms they represent a

11  significant percentage of Defendants' business.[5]   These sales likely include

12  ongoing warranty relationships as well, considering that they are selling medical

13  equipment to veterinary clinics.  Defendants contracted with trade show organizers

14  for display booth space in Washington, expending over $4400 in Washington for

15  this purpose based on estimated costs.  *Decl. Chris Campbell at ¶¶ 7-8* (showing

16  bases for estimated costs).  In addition, Defendants made public accusations of

17  patent infringement at the Seattle Forum.  *See Decl. Chris Campbell; Decl. Stan*

18  *Leslie; Decl. Mark Beatty*.  Defendants attempted to enforce her patents against

19  Plaintiff by demanding that the Forum Exhibition Manager, Becky Stevens, order

20  Plaintiff to remove the accused product from the Forum based on the alleged

21  infringement of patents she owned.  *Id.*

22

23       Finally, assertion of personal jurisdiction is reasonable and fair under the

24

25  _____

26  [5] Ms. Miale's assertion that neither she nor TyLift have ever paid taxes in Washington is also
    misleading for several reasons.  First, based on the recent travel to Washington for the trade show,
27  they paid significant sales tax on the estimated $4400-plus they spent on this expedition.  Second,
    sales made to Washington residents from out of state may still be subject to sales tax.  Whether
28  Defendants did pay required taxes to Washington is a separate issue from whether they were
    obligated to pay, a more relevant consideration for determining personal jurisdiction.

29


RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

circumstances. Defendants purposefully directed their activities, their sales, their physical presence, their travel, their marketing, their shipping, and, among other things, their multiple threats of infringement– not through third party licensees over whom they have no control as in Red Wing– including presumably ongoing warranty relationships with the veterinary clinics they sell to. Defendants sell their products nationally and even in foreign countries, and advertise through the internet which is essentially borderless. *See Exh. 1, p.5, to Decl. Miale* (advertising "Direct Worldwide Shipping."). They traveled to a trade show in Washington where they conducted sales and direct marketing and engaged in substantial local commercial transactions ancillary to their product sales, including substantial sales taxes.[6]

> "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

Akro at 1545-6, citing BurgerKing, 471 U.S. 462, 476-77 (1985) (internal quotations omitted).

Substantial sales into Washington, combined with substantial sales while physically present in Washington, combined with public threats of legal action made in Washington, combined with attempts to enforce the patents against Plaintiff, combined with an infringement letter addressed to Plaintiff in Washington which clearly indicated an intent to enforce their patents, more than satisfies the requirements for minimal contacts found sufficient in Akro and Genetic Implant Sys.

---

[6] Ms. Miale's claims that Defendants have never employed anyone in Washington is misleading. She and her mother – the only two employees of TyLift according to Miale's Declaration – spent



1

2

3    **3.    Defendants have presented no compelling reasons to deny**

4    **jurisdiction.**

5    Defendants have the requisite minimum contacts with the forum

6    state, so the burden lies with Defendants to present a "compelling case" for the

7    unreasonableness of personal jurisdiction. <u>Electronics for Imaging, Inc. v. Coyle</u>,

8    340 F.3d 1344, 1351-52 (Fed Cir. 2003). Courts consider the following factors in

9    determining whether the exercise of jurisdiction would be unreasonable: 1) the

10    burden on the defendant, 2) the interests of the forum state, 3) the plaintiff's

11    interest in obtaining relief, 4) the interstate judicial interest in obtaining the most

12    efficient resolution of controversies, and 5) the shared interest of the several states

13    in furthering fundamental substantive social policies. <u>Id</u>; <u>Akro</u>, 45 F.3d at 1546;

14    *accord* <u>Genetic Implant Systems</u>, 123 F.3d at 1459.  Such situations are rare, and

15    limited to circumstances where the Plaintiff's interest and the forum state's interests

16    in adjudicating the dispute in the forum state are so attenuated that they are clearly

17    outweighed by the burden of subjecting the defendant to litigation in the forum

18    state. <u>Akro</u>, 45 F.3d at 1549.

19

20    **a.    No great burden is imposed on Defendants by asking**

21    **them to defend their actions in the very State where those**

22    **acts took place**.

23    The burden on Defendants is not great, and certainly no

24    greater than the burden on Plaintiff, also a small family owned business.  Plaintiff

25    supports 40 local employees and their families in Vancouver, Washington, where

26

27    _____

several days at the trade show in Washington marketing TyLift products and actually made sales
28    there.

29



they maintain offices and production and distribution facilities. *Decl. Sam Campbell.* Dragging Plaintiff's principals to a distant jurisdiction would cause substantial disruption to their affairs and potentially a substantial impact on the local community. Defendants', on the other hand, do not maintain a place of business and conduct most of their sales through their Internet site and trade shows, so their sales and marketing would not be disrupted by periodic brief absences. *Decl. Miale ¶¶ 16-18.* Defendants do not manufacture their own product, so production would not be disrupted by periodic absences. *Decl. Miale ¶¶ 16-18.* Defendants have only two employees consisting of the patent owner and her mother, so there is no greater community at risk from any temporary disruption of their business. *Decl. Miale  ¶¶ 16-18.*

Essentially, Defendants attempt to burden Plaintiff with legal uncertainty to gain an unfair advantage by threatening a baseless infringement lawsuit and then claim immunity from their actions by running back to California. This is not the type of unconstitutional burden contemplated by the due process test.

**b.   The interest of Washington and the several states in furthering fundamental substantive policy goals coincide here.**

Washington, as well as other states, has a recognized interest in ensuring its residents are able to compete in the marketplace free from frivolous threats of litigation which may act to constrain their lawful activities. Electronics for Imaging, 340 F.3d at 1351-2'; Akro, 45 F.3d at 1549. The several States also have a common interest in ensuring parties are not allowed to avail themselves of the



1

2

3   benefits of the state by competing against state residents, then escape

4   accountability for their harmful acts within the state simply by flying home. <u>Id.</u>

5   Moreover, such conduct defeats the policy goals of unified national patent laws as

6   patent owners can use this jurisdiction avoidance technique to impose a severe

7   burden of uncertainty regarding competitors' legal rights in a foreign state while

8   effectively denying those competitors a trial on the merits to resolve their rights.

9        **c.    Plaintiff's have an obvious interest in obtaining relief.**

10       Campbell of course has a significant interest in obtaining relief.

11  Campbell has a product that it believes does not infringe, which is an important

12  product to them, but they are faced with uncertainty over whether they may liable

13  for damages for continuing conduct due to Defendants' threats. <u>Akro</u>, 45 F.3d at

14  1548-9. The multiple threats of infringement in this case cast a significant pall over

15  Plaintiff's manufacturing and harm Plaintiff's marketing interests. Clearly, Campbell

16  benefits greatly from a decision that its product does not infringe. This factor

17  weighs heavily in Campbell's favor. <u>Electronics for Imaging</u>, 340 F.3d at 1352

18  ("...EFI also has an undisputed interest in protecting itself from patent

19  infringement.")

20

21       **d.    The interstate judicial interest in obtaining the most**

22       **efficient resolution of controversies favors Washington.**

23       The most efficient resolution of the controversy would be in the

24  location where the locus of activity was present. (1) The infringing product is made

25  and distributed from Washington. (2) Most of the witnesses relating to the design,

26  development, production and sales of the accused product, as well as the intent of

27

28

29

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

accused infringer, are located in Washington.  (3) The accusations of infringement were made by Defendants while physically present in Washington.  (4) No co-pending state law claims are at issue which would affect the purely Federal patent law claims.  (5) The 9th Circuit Judicial Conference disclosed that the Southern District of California, the district where Defendants are located, is significantly overburdened with cases in comparison to the Western District of Washington.

### 4.    Caselaw supports personal jurisdiction on the present facts.

Red Wing Shoe, 148 F.3d 1355, cited by Defendants, is easily distinguished from this case. In Red Wing Shoe, the plaintiff brought a declaratory judgment action for noninfringement against Hockerson-Halberstadt, Inc. ("HHI") in the District of Minnesota. HHI was a Louisiana corporation with its principal place of business in New Mexico. HHI's exclusive business was enforcing the rights associated with two footwear patents, which were licensed to third parties through arms-length transactions. HHI's only contact with Minnesota were demand letters and royalty income from third-party licensees that did business in Minnesota. The defendants themselves had never set foot in the state.  The court ruled that it lacked personal jurisdiction over HHI, because "doing business with a company that does business in Minnesota is not the same as doing business in Minnesota." Red Wing Shoe, at 1361.  Here, Ms. Miale has not merely licensed her patents to a company marketing and selling in Washington.  She controls and directs the company, and any sales or licenses of the patented products must have her personal approval.  Thus, the patent owner and her closely held licensee are directly marketing and selling in the forum state.

R RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3

4    This case is more anaologous to <u>SRAM Corp. v. Sunrace Roots Enterprise</u>

5    <u>Co., Ltd.</u>, 390 F.Supp. 2d 781 (N.D. Ill. 2005), the court found specific personal

6    jurisdiction over the defendant  because the defendant "purposefully directed" its

7    activities at residents of this forum by marketing a product that directly competed

8    with the allegedly infringing shifter, and the litigation resulted from alleged injuries

9    to SRAM's own marketing efforts.  Here, Miale and Ty-Lift alleged infringement in

10   Washington, they compete with the accused product in Washington, and this

     litigation is the direct result of Defendants actions in Washington.

11   The overwhelming weight of caselaw on the facts present here supports no

12   other conclusion but that the Court has personal jurisdiction over Ms. Miale *and* her

13   company Ty-Lift.  They physically chose to come to Washington to promote the

14   competing products that are covered by the patents they assert.  They have sold

15   thousands of dollars worth of that competing product.  While in Washington they

16   made several verbal threats to Plaintiff's employees that Plaintiff  was copying the

17   patents, were knock of artists, that it was going to cost Plaintiff's money, that patent

18   attorneys are expensive, and said that their patent attorney would be in touch with

19   them.  Then, Ms. Miale had her patent attorney send a demand letter to Plaintiff

20   clearly threatening infringement by saying Plaintiff's product fell within the claims of

21   "Ty-Lifts" (in reality, Miale's), patents. Physical presence, voluntarily made, sales,

22   the forum contact is directly related to the issues this case is about.  This is a clear

23   case of personal jurisdiction.

24

25

26

27

28

29



1

2

3

4

5

**B.    Ms. Miale is subject to personal jurisdiction as the patent owner who threatened to enforce her rights against Plaintiff, as well as her company.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Ms. Miale is subject to personal jurisdiction in her own right as an alleged patent owner, regardless of and independent of Ty-Lift.  Defendants miss the point when they imply that Genetic Implant Systems requires a piercing of the corporate veil in order to gain personal jurisdiction over individual corporate officers.   In Genetic Implant Systems the court relied on the fact that the patent at issue was assigned entirely to the corporation in determining that the patentee was not subject to personal jurisdiction – i.e. the original patentee no longer possessed a property interest in the patent unless the corporate veil was pierced.   Genetic Implant Systems, 123 F.3d at 1457   In the present case the patentee, Theresa Miale, is still the owner of the patents at issue and holds all right, title and interest to them.   Moreover, the patentee/owner is the very person who publicly accused Plaintiffs of infringing on the patents, in the forum state.   It was, in fact, this confrontation at the Seattle Forum which initiated the cease and desist letters. Further, Ms. Miale conveyed her accusations to Plaintiff's customers at the trade show in Washington, and she attempted to enforce her patents by demanding to the trade show organizer that Plaintiff be ejected from the trade show.  Ms. Miale consummated two substantial sales for TyLift at the trade show in Washington.

24

25

26

27

Ms. Miale is also subject to personal jurisdiction because she directly licensed the patents in suit to TyLift for sale to residents of Washington.  This is the same arrangement that the court in Genetic Implant Systems held was **sufficient**

28

29

RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3    **to confer personal jurisdiction** on the accuser in combination with public

4    accusations of infringement and demand letters to the declaratory judgment plaintiff

5    in the forum state.  Additionally, this owner/assignee personally directs the sales of

6    Ty-Lift's products to Washington residents.  Therefore, both Ms. Miale individually,

7    and Ty-Lift as a corporate entity, are subject to personal jurisdiction in this Court.

8        Nor can Ms. Miale claim that she did not send the demand letter but only Ty-

9    Lift sent it (whichever version of ownership is advanced by Defendants).   Ms.

10   Miale's Declaration makes clear that Ty-Lift could not have offered a "business

11   solution" (i.e. a license of some sort) without permission of the patent owner – Ms.

12   Miale.   Defendants cannot seriously argue that Ms. Miale the president did not

13   have permission from Ms. Miale the patent owner to send the demand letter?  This

14   is a game the Court should reject, an attempt to place form over substance.

15

16       Thus, personal jurisdiction is appropriate for Ms. Miale not based on any

17   theory of piercing the corporate veil, but rather because she is the owner of the

18   patents and as such she licensed TyLift to sell products in Washington, and when

19   she travelled to Washington she acted *both* as an officer of TyLift and as the patent

20   owner. This is distinguishable from Core-Vent where the patentee acting as a

21   corporate officer no longer had a personal ownership interest in the patent.

22   **C.    Ty-Lift held itself out to be the owner of the patents, so this Court**

23        **should exercise jurisdiction over Ty-Lift as well.**

24        Defendants again attempt to play a game by claiming that Ty-Lift is not a

25   proper plaintiff because they do not own the patents in suit, and thus the claims

26   should be dismissed under FRCP 19 for inability to join an indispensable party.

27

28

29

**R** **RYLANDER**
**& ASSOCIATES PC**
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

*See Def. Mot. at 13-17; Decl. Miale at ¶5.*  Ty-Lift asserted an ownership interest in the patents asserted and cannot escape jurisdiction by now disclaiming ownership interest.  .   In the letter from F.T. Mahaney, who also happens to be the attorney who prosecuted the patents, Ty-Lift stated that the '508 and '662 patents are "owned by Ty-Lift."  Plaintiff cannot know for certain which statement is true and which is a fabrication – nor can the Court for that matter.  Defendants' prevarication has created this uncertainty of rights, so in order to clarify all parties' rights the Court may, and should, exercise personal jurisdiction over all parties involved. Defendants should not benefit from their own dishonesty by escaping to California.

**D.**    **There is unquestionably an actual case or controversy**

Defendants appear to raise the issue of whether a a case or controversy exists satisfying Article III of the Constitution and the Declaratory Judgment. Plaintiff addresses this briefly here to leave no doubt.  Defendants manifested a clear intent to enforce their patents against Plaintiff, despite their attempt at word games claiming Ms. Miale "never used the word infringement in my discussions with Campbell Pet Products."  *See Decl. Miale ¶39.*   Whether she used the word "infringement" or just "copy" is not relevant to the issue because either way the meaning was clear.[7]   Moreover, Defendants alleged infringement in their Motion to Dismiss at p.13, ll.16-17: "Campbell Pet Products, not Ty-Lift or Ms. Miale, is the party that chose to deliberately copy a patented product."  This is an accusation of infringement in a court pleading.

Even under the narrow "reasonable apprehension" test, clearly the case or

OPPOSITION TO DEFENDANTS' MOTION TO DISMIS    Page 23
FOR LACK OF PERSONAL JURISDICTION
(07-CV-5375-RBL)
10/9/2007 4:55:54 PM CAMP03

**RYLANDER**
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931

1

2

3

4

5

controversy exists. But since the Supreme Court rejected that test in <u>MedImmune, Inc. v. Genentech, Inc.</u>, 127 S. Ct 764, 771 (2007), the Federal Circuit has applied a much broader test:

6

7

8

9

10

11

> "In a post-<u>MedImmune</u> decision, we explained that the "Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test." <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1380 (Fed. Cir. 2007). We further explained that 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without a license under the patent, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.' <u>Id</u>."

12

13

14

15

16

17

18

19

<u>Adenta GMBH et al v. Orthoarm, Inc.</u>, Fed Cir. Dckt No. 2006-1571, -1598 (Fed. Cir., September 19, 2007) at 9-10. Here, the patent owner and Ty-Lift (an alleged patent owner, but certainly at least a licensee) accused Plaintiff of infringing the '508 and '662 patents – both at the Seattle Forum and in the demand letter, threatened legal action, and attempted self-help enforcement at the Seattle Forum. Whatever test the Court applies there is definitely an Article III case or controversy in this case.

20

### III.    CONCLUSION

21

WHEREFORE, the Court should deny the motion to dismiss in its entirety.

22

23

24

25

DATED October 9, 2007        /s/ Kurt M. Rylander
                             KURT M. RYLANDER, WSBA 27819
                             RYLANDER & ASSOCIATES PC
                             406 West 12th Street
                             Vancouver, WA 98660
                             (360) 750-9931
                             rylander@rylanderlaw.com
                             Of Attorneys for Plaintiff

26

27

28

---

[7] However, several witnesses have stated under oath that Ms. Miale did indeed use that word, and in the context of a jurisdictional challenge the Court must resolve such factual disputes in Plaintiff's favor.

29



RYLANDER
& ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931